The next matter on our calendar is AB Discount Depot v. USCIS. Council. Michael Piston on behalf of the petitioner. Your Honor, the issue in this case is quite simple. Does the agency err when it fails to follow the definition of managerial capacity in the statute? The sole issue, the dispute here is whether Avid Matcha will be employed in the United States in a managerial capacity. And 8 U.S.C. 1101A44A provides a very specific definition of the term managerial capacity. It means an assignment within the organization in which the employee primarily manages the organization or supervises and or supervises and controls the work of other employees. And if there are other employees directly supervises the employee to hire and fire those people and exercises discretion of the day to day operations. If there were no if there were no employees, could a person be a manager because he manages the operations? Even if there were no theoretically, theoretically, yes, that is a theoretical possibility. Those types of cases have not done well. And in fact, you'll see that the government almost entirely relies upon those zero employee cases in its brief. But this is not a zero employee case runner. This is a case where the manager, the owner, an entrepreneur bought a company, which was a company whose employment fluctuated over the course of the season. It was a seasonal company. It did well in the winter, poorly in the summer. So its employees varied from three to five. It had a manager who was managing those employees. Sometimes he was managing people. Sometimes he was managing for people. He was nevertheless a supervisor. Counselor, there seems to be my understanding of the way the relevant law works is that there's two different kinds of managers. There's the personnel manager and then there's a functional manager. It was unclear to me which one you were arguing. And I know personnel and personnel require you to be a supervisor of supervisors. Absolutely, Your Honor. He supervised two supervisors, one of them supervisor. But to Judge Sachs's question, if there were no employees to supervise because there were only three people, how was he a supervisor of a supervisor? Well, first of all, Your Honor, there were seven to nine people. OK, there was two companies here that he was that operated as a that there was the parent company and the subsidiary company. So the parent company, which was AB Discount, had two to four employees, depending upon three to five employees, depending upon what time of the year it was. In the summer, they would go down to three. In the winter, they would go up to five. They had one supervisor. He supervised two to four people. And there was a subsidiary mansion and that had that was fairly stable. So that has single manager, Mr. Shaw, and he supervised three people consistently. So this is not a zero employee case, which, as I said before, is primarily what the government is relying upon and is free. So the simple and hard fact of the matter is, is that there is undisputed testimony in the record that both from Mr. Mancha and from his managers that he spent most of his time managing managers, which is exactly what one would expect. When an entrepreneur comes in and buys on an already existing company, there's an AB Discount was already in business. Its owner was managing it. He bought Mr. Mancha, bought the guy out. And now so now the owner manages the company and Mr. Mancha supervises the manager to make sure that Mr. Mancha is going to get a good return. Who was the manager, not Mr. Mancha? Who was he supervising? Mr. Bay supervise to Mr. Bay, who is the manager of AB Discount and Mr. Shaw, who is the manager of the subsidiary Mancha Inc. So he was managing one person. He was managing two, Your Honor. He was managing two different companies. Your Honor, as we cited in the brief, as the government did not dispute, the two companies basically operate as a single unit and therefore should be considered a single unit for this case. So hours, the government is unimpressed with the number of hours he worked for the duties that he had to perform. Can you speak to that? Your Honor, there is no requirement that a multinational manager be a full time manager. This is particularly significant in that these very statutory provisions which create the multinational manager company also provide that a person who operates with a position is going to get a national interest waiver must be employed full time. And a religious worker must be employed full time. The Congress's failure to specify that a multinational manager must be a full time employee under the case of U.S. Under the Rossello case, I did my brief, establishes that, in fact, there is no such requirement. He basically did work part time. That is absolutely true. And he could be, to your mind, he could be a full, he could be a multinational manager, even working part time. Not to my mind, Your Honor, under the plain language of the statute. Not me that's advocating this position. I'm just this Congress. Has any authority? Do you have any authority that has adopted the interpretation you're offering to us right now? The Immigration and Nationality Act is the best authority I can provide, Your Honor. Well, we'll ask the government when they take the podium. Well, I'm sure you will. And in fact, the agency, and so the key question here is really a very simple one. Was Mr. Mancha primarily employed in a managerial capacity? And we could show that by showing that he spent a majority of his time managing the company. We could show that by showing that he spent a majority of his time supervising supervisors. We did both. And the agency even admitted that he primarily runs the company. Well, run happens, since there's no statutory definition of run, that means under numerous Supreme Court decisions, and of course decisions of this Court, we look to the ordinary language of the word run. And the word run actually has to define both by Merriman-Webster and by Oxford as meaning managing. So he managed, they've admitted that he primarily manages the company. And again, doesn't that square more solidly with the idea of being a functional manager as opposed to being a personnel manager, which is what you're arguing? My review of the record is that he spent about 25% of his time supervising supervisors. Do I have that right? No, Your Honor. He spent about 25% of his time supervising Mr. Shaw, who was the guy in charge of the Mancha Inc. subsidiary. He spent 56% of his time managing Mr. Baig, who was the supervisor of the AB Discount Company. And I don't see that there's any real contention between being a functional manager and being a personnel manager. He was actually both. But the point is that when you start arguing about functional managers, if you look at the statute, the statute only provides that you even have to talk, you can even talk about function managing if you're not managing any supervisors or supervising. It's a way of getting, it's a way of letting companies who, bringing in managers who don't actually supervise and qualifying them for this multinational category. It's not even something you even consider in cases like this, where the person actually is supervising supervisors. And that's what Mr. Baig was doing. He was supervising supervisors. And there's no dispute in the record of this particular point. Furthermore, Thank you, counsel. You have reserved two minutes for rebuttal. Thank you very much, Your Honor. We'll hear from the government. Good morning. Good morning. Good morning. I'm Laila Salavatik, Assistant United States Attorney for the Eastern District of New York, representing Defendant Appley, United States Citizenship and Immigration Services, USCIS. Plaintiff's AP Discount Depot LLC and its owner, Ahmed Mansha, seek APA review of this March 2019 decision, as you have heard, denying Discount Depot's Form I-140 petition for alien worker. That Discount Depot had sought on behalf of its majority owner, Mr. Mansha. Mr. Mansha is a Pakistani national. He had been working in the United States since 2014 under a temporary non-immigrant E-1 visa. As to which, this is a helpful point to keep in mind, renewal may be sought an unlimited number of times in two-year increments. Nevertheless, in 2016, Discount Depot, a company, again, of which Mr. Mansha is the majority owner, applied on Mr. Mansha's behalf for a different type of employment-based visa, an I-140 pursuant to 8 U.S.C. 1153. Counselor. Yes, Your Honor. If I may, is there any way under this statute in your reading for a small business to qualify? Like in this situation, or is there a per se numerosity interpretation that you're asking us to read into the statute? Thank you for your question, Your Honor. The statute actually addresses both the statute and the regulation, Section 8 U.S.C. 1101A4C, and the regulation 8 CFR 204.5J, I believe 4, in which size of the staffing is a factor that may be considered but not the sole factor. And in its brief, the government addresses at page 27 and 29 to 30 a number of cases which refer to the numbers, which inter alia refer to the numbers of staffing involved. And you can see these are not 100-person firms necessarily, and a number of factors are assessed in terms of interpreting whether the record that the company has submitted supports a managerial capacity. And in many of these cases, discrepancies such as exist here, where the employer applicant has not met its burden of showing that the beneficiary here would be Mr. Mancha was primarily managerial, is because there are these fluctuations and variations and lack of clarity as to who is doing what, and exactly the sorts of problems here. I think it was Judge Pooler who may have mentioned the 25% issue. That is, in fact, reflected in the record at page 1323. And it's one of the things that USCIS noted that supervising two supervisory employees, spending 25% of one's time on that did seem to be inconsistent with the complexity of the organization here at best. Counsel responded to my question, Counsel, by saying that there's no rule that a half-time person can't be a manager or a multinational manager. Isn't that correct? Yes, Your Honor. I'm not aware of a specific rule one way or the other, but the issue here again goes to the issue of discrepancy in its application. Plaintiff described Mr. Mancha as a full-time employee. That's incontrovertible. I believe it's at page 1390 of the record. And when it set out the duties that the percentage of time of the duties that Mr. Mancha performed, the sum total came out to, I believe, four hours and change. As USCIS noted in its final agency decision, that's a discrepancy that needs to be resolved and was not resolved in the materials submitted by. The four hours was what? The four hours was what? Among the submissions made by USCIS in support of its application was a breakdown of the time in a typical day that Mr. Mancha would spend. And if I made a citation to the record, is it R33 to 34? That's. Four hours. You said four hours. Four hours and 45 minutes, Your Honor. Per day? For a typical day. That was the discrepancy. That's all I was asking. So, Counselor, you do point out the discrepancies, which I do recognize and acknowledge were part of what the immigration judges were looking at when doing this. But one of the things that I am concerned about is whether or not they had an obligation to be that specific to begin with. I was under the impression that the INA removed languages that said that they need to provide specific primary tasks in order to be able to produce the product or the service. Is that right? Were there discrepancies in things that were relevant? Or were they just additional information that we could consider or not in the panoply of factors? No, Your Honor. That was sort of a multi-part question. I don't want to be unclear in responding. So let me just clarify by saying the INA section in section 1101A4A does set forth a multi-part ampersand factorial test. So that's fairly specific insofar as that goes. And that the discrepancies here were very significant. So if we want to have someone who has primarily managerial duties over and in the application, the figure cited was 11 employees. There's an 11-employee company across both Discount Depot and this Mancha, Inc. company. It should not be complicated to break out the work schedules of these employees, the organizational structure, to identify the specific names and duties of all the people with those jobs. And it was not requested for some kind of antediluvian period. It was requested for the time of the July 2016 application. It was requested. The agency requested a breakout and did not get a breakout. Is that what you're saying? Yes, indeed, Your Honor. I requested it several times, actually. In this case, the employer, Discount Depot, had three bites at this apple. The original application, the petition was reopened on plaintiff's motion. Asking for specifics as to who was being supervised and what they were doing? That's exactly right. And three times and did not get a response any one of those three times. Well, just to be clear, Your Honor, the initial submission was by Discount Depot with its original application. I understand. Yes. But the total of three times they were obligated to give this information and did not. That's your point. Yes, Your Honor. Or, you know, another way to put it would be you want to support your record if you have a burden of proof to establish that someone has duties that are primarily managerial within the meaning of the statute. And they had these three opportunities. They were specifically requested to provide that. Yes. Yes, Your Honor. So you're not arguing for the discrepancies that are a matter of an adverse credibility as much as a failure to plead proof. Is that is that right? Or are they both? I'm not sure what to do with these discrepancies. Right. What am I supposed to do with the discrepancies on the record? Understood, Your Honor. And, Your Honor, we do cite, just for Your Honor's convenience, on page 27 of the government's brief, cites a number of cases, including from this circuit, forgive me if I mispronounce this, the Sheik case, in which in a similar preferential employment petition such as this one, only in a different category, not for managerial but for a religious worker. This court held that, and I'm reading here, conflicting, quote, conflicting assertions and evidence regarding the beneficiary's employment called into question, unquote, whether the beneficiary's position met the statutory requirement. The employer applicant submits on the record information, and the agency needs to evaluate it. So just to describe some of the discrepancies here. So you have, for example, not just with Mr. Mancha, was he full time? Was he part time? And the changing duties, because in the serial applications, there were serial descriptions of his duties, as described in the government's brief at page 23 to 24, and in the final agency decision at record page 8. But for example, the tax structure did not support the organizational structure described. So for example, the third quarter tax filing 2016, which is when this application was submitted, did not have 11 employees. And for example, if you drill down into the W-2s, employees described as overseeing health and beauty, and sort of a supervisor, were being paid a pittance, several thousand dollars, not supportive of that kind of role. A supervisory cashier training other cashiers when she was the only cashier listed when you cross-reference other submissions. So that is why USCIS determined it was reasonable. USCIS looked at the standard and reasonably concluded, based on the relevant considerations, that Discount Depot had not met its burden for establishing that Mr. Mancha was primarily managerial in his role. That single cashier also had the same salary as the general manager listed as her supervisor. Isn't that true? Indeed, Your Honor. The same as her supervisor, Mr. Bay, that would be at R-36 and R-36 to 39 of the record. It's also discussed in the final agency decision R-8. Mr. Bay is among those that Mr. Mancha supervised for 25% of his time. It wasn't really a hierarchy that you're looking for. There is no real organizational chart that you could rely on for Mr. Mancha to prove that he was a multinational manager. USCIS correctly determined that Discount Depot had failed to meet its burden of establishing exactly that, that he was primarily engaged in managerial duties. In other words, the answer is yes. Yes, Your Honor. Thank you, Counsel. Thank you. Mr. Piston, you have two minutes for rebuttal. Well, Your Honor, speaking of discrepancies, we just heard counsel say three times that AB Discount did not describe the duties of the employees. That's simply not true. Look, take a look at CIR section 36 of the administrative record. You have detailed job duties for every single employee of the company. And this is the problem here. The government is trying to distract the attention of this court with irrelevances that sound bad, but when you go into details, they're simply not true. They're totally irrelevant. For example, it's totally irrelevant whether or not Ms. Bavar was training cashiers or not. The hard and simple fact of the matter is that she was an employee. And whether Mr. Bavar... Actually, I think that that's an overstatement, right? Like, we need to show that he was supervising supervisors. And he was supervising. But one indicia is training people. And if you're not going to be training somebody, you have to show that there's someone else you're supervising. Ms. Bavar was not a manager. Never claimed to be a manager, Your Honor. Ms. Bavar was a cashier. She was supervised by Mr. Bavar. And the fact that they were paid the same amount of money is really neither here nor there. Okay? Furthermore, we did provide them with an organizational chart, which showed very clearly that Mr. Bavar was supervising. And this point is also made at CIR 36. It's also made other places in the record. I just can't tell you that right off the top of my head. All of the alleged discrepancies are irrelevant. Nothing changes the fact that the agency did not dispute that Mr. Mancha spent a majority of his time supervising supervisors. And they even said he spent most of his time running the company. What more can we do? Well, they disputed that they questioned. The agency questioned the fact that Mr. Mancha spent 25% of time supervising the general manager. I'm stunned by that claim. I have no recollection. I've lived with this file for five years, and I have no recollection of ever seeing that. And I think there's some confusion going on. And more to the point, no one disputes that he spent 56% of his time supervising the other manager, Mr. Bague. That 25% figure, that's the percentage of time he spent supervising Mr. Shaw. So, again, that would fall into the category of neither here nor there. Thank you. Thank you. Thank you both. I will reserve decision. Thank you very much. Two cases on our calendar are on submission. So I'll ask the clerk to adjourn court. Court is adjourned. Thank you. Thank you. Thank you.